Davida Brook (CA Bar No. 275370)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
dbrook@susmangodfrey.com
T: (310) 789-3100
F: (310) 789-3150

Ian B. Crosby (*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
icrosby@susmangodfrey.com
T: (206) 516-3880
F: (206) 516-3883

Y. Gloria Park (*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P
One Manhattan West, 50th Floor
New York, NY 10001
gpark@susmangodfrey.com
T: (212) 336-8330
F: (212) 336-8340

Richard "Chipper" Adams
(*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
cadams@susmangodfrey.com
T: (713) 651-9366
F: (713) 654-6666

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

SYTEMLLABS (d/b/a DAVOICE),

Plaintiff,

vs.

PERPLEXITY AI, INC.,

Defendant.

Case No. 3:26-cv-10909

**COMPLAINT FOR:**

**(1) Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836**

**(2) Violation of the California Uniform Trade Secrets Act, Cal. Civil Code § 3426**

**(3) Breach of Contract**

**(4) Breach of Implied Covenant of Good Faith and Fair Dealing**

**(5) Fraudulent Inducement**

**(6) Violation of California Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 et seq.**

**(7) Unjust Enrichment**

**JURY TRIAL DEMANDED**

Plaintiff SyteMLLabs, doing business as DaVoice ("DaVoice" or "Plaintiff"), by and through its attorneys, respectfully brings this Complaint against Defendant Perplexity AI, Inc. ("Perplexity" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1. Innovators earn their rewards. Imitators steal them. In the strategic field of wake-word technology to initiate voice communications with AI systems, Perplexity, a generative AI company recently valued at $20 billion, is an imitator. It stole proprietary wake-word technology and know-how from DaVoice, a small startup founded by physicist Dr. Helge Voss and entrepreneur Mr. Ofer Fryman, [redacted] But once it had that technology in hand, Perplexity pocketed the deal and kicked DaVoice to the curb. This suit seeks to right that wrong.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

8. DaVoice now brings this action to vindicate its intellectual property rights and halt Perplexity's continued unauthorized use and disclosure of DaVoice's trade secrets.

## THE PARTIES

9. Plaintiff SyteMLLabs (d/b/a DaVoice) is a Switzerland corporation with its registered office at Rue des Marbriers 4, c/o GEVISIA SA, 1202 Geneve, Switzerland.

10. Defendant Perplexity AI, Inc. ("Perplexity") is a Delaware corporation with its principal place of business at 115 Sansome Street, Suite 900, San Francisco, California 94104.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction over the violation of the Defend Trade Secrets Act (18 U.S.C. § 1836) alleged in this Complaint pursuant to 28 U.S.C. § 1331.

12. The Court has supplemental jurisdiction over the violation of the California Uniform Trade Secrets Act (California Civil Code § 3426), California Unfair Competition Law (California Business and Professions Code §§ 17200 *et seq.*), and other state-law claims pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as DaVoice's federal claim.

13. This Court has personal jurisdiction over Perplexity because Perplexity's headquarters and principal place of business are in San Francisco and because Perplexity contractually consented to the exclusive jurisdiction of state and federal courts located in San Francisco, California.

14. Venue is proper under 28 U.S.C. § 1391(b)(1) because Perplexity resides in San Francisco. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to DaVoice's claims occurred in San Francisco. Venue is also proper because the parties contractually agreed to venue in the state and federal courts located in San Francisco, California.

## DIVISIONAL ASSIGNMENT

15. This action should be assigned to this Court's San Francisco Division. Under Rule 3-2 of this Court's Civil Local Rules, a "civil action arises in the county where a substantial part of the events . . . giving rise to the claim occurred," and "all civil actions that arise in the count[y] of

. . . San Francisco . . . shall be assigned to the San Francisco Division or the Oakland Division." Assignment to the San Francisco Division is therefore proper because a substantial part of the events giving rise to DaVoice's claims occurred in San Francisco. Assignment to the San Francisco Division is also proper because the parties contractually agreed to venue in the state and federal courts located in San Francisco, California.

## FACTUAL ALLEGATIONS

### I. DaVoice's Founding, Business, and Trade Secrets

16. DaVoice is a three-person startup founded in 2023 by Dr. Helge Voss and Mr. Ofer Fryman. It specializes in developing custom wake-word algorithms for electronic devices.

17. Wake-word detection technology allows a device to continuously listen for a specific word or phrase that—if heard—activates that device. When the wake word is detected, the device "wakes up" and begins processing subsequent commands. A wake-word system thus serves as a critical gatekeeper for the use of AI assistants. These systems require exceptional accuracy in recognizing the target word or phrase, a low rate of false wakes, and an ability to conserve device energy to permit continuous on-device listening without draining battery life. Developing a reliable wake-word system demands deep expertise in many fields, including digital signal processing, neural network architectures optimized for edge deployment, and extensive training data across languages, accents, and acoustic environments.

18. Dr. Voss is a physicist by training with over two decades of experience in developing machine-learning and AI frameworks. In 2005, Dr. Voss co-developed a Toolkit for Multivariate Analysis ("TMVA"), one of the world's first production machine-learning frameworks for scientific data analysis. TMVA was later used by CERN, the European Organization for Nuclear Research (in French, Conseil Européen pour la Recherche Nucléaire), to be integrated into its ROOT platform, software that is used for processing, storing, and analyzing massive datasets in high-energy physics.[1]

[1] *About ROOT*, ROOT Data Analysis Framework, https://root.cern/about/ (last visited Sept. 9, 2026).

19. Mr. Fryman is an entrepreneur who previously founded a successful AI start-up. Before DaVoice, Dr. Voss and Mr. Fryman together founded Syte, which provided AI visual-similarity search tools for online fashion and home-décor retailers.

20. After Syte, Mr. Fryman consulted for several startups, including one called RelyOn, which provides software applications and technology to improve safety in high-risk industries. One project that RelyOn tried to tackle was developing a high-quality wake-word system in house.

21. It failed. So RelyOn searched for an external vendor that could develop such a system and asked Mr. Fryman to help. After an extensive search, RelyOn and Mr. Fryman found only two subpar options: (1) open-source wake-word models that, while free, approached only around 70% accuracy, and (2) a single vendor that offered 90% accuracy but only at cost-prohibitive pricing.

22. Mr. Fryman saw an opportunity to deliver high-quality wake-word solutions at more affordable price points. He recruited Dr. Voss, with whom he had successfully founded Syte and whose experience in particle physics would be especially useful in developing a wake-word system with extraordinary accuracy. Dr. Voss and Mr. Fryman predicted that wake words would become increasingly important with the rise of AI and as consumers rely ever more on AI assistants to execute everyday tasks.

23. Mr. Fryman and Dr. Voss did just what they set out to do. DaVoice developed proprietary technology to offer wake-word solutions with well over 90% accuracy, at prices well below what had been previously available on the market.

24. DaVoice's technology embodies years of specialized research and development, including proprietary custom model architectures, source code, and inference code and logic undergirding wake-word systems; approaches and datasets for model training (including data that accounts for the optimal combination of accents, intonations, pauses, and speeds to expose the model to a variety of speech patterns, as well as a curated list of background noise samples against which the wake word may be spoken), emulated streaming implementations, and other proprietary know-how related to wake-word detection and verification technology.

25. And the market noticed. DaVoice has used this technology and know-how to develop wake-word solutions for major companies including Volkswagen and Samsara. These are also the trade secrets that DaVoice disclosed under carefully negotiated confidentiality terms to Perplexity [redacted].

## II. **Perplexity's Business,** [redacted]

26. Perplexity is a generative AI company that purports to have revolutionized internet search by providing its users with a self-described "answer engine." Backed by investors like Jeff Bezos and Nvidia, Perplexity was valued at $20 billion in a 2025 funding round.[2] Recent news sources report that "Nvidia is in talks to invest in Perplexity as part of an equity funding round that would value the AI startup at more than $30 billion."[3]

27. Perplexity has distinguished itself from other search engines and AI products on the market by emphasizing that it has built a "trust map of the web"[4] and provides "accurate, trusted, and real-time answers to any question."[5]

28. Since its founding in 2022 with the "answer engine," Perplexity has quickly expanded its product and service offerings, which now include different subscription tiers for the "answer engine"[6] and Comet, an AI-powered "agentic" web browser that not only can search the

[2] *Perplexity Finalizes $20 Billion Valuation Round, the Information Reports*, Reuters (Sept. 10, 2025 6:55 PM), https://www.reuters.com/technology/perplexity-finalizes-20-billion-valuation-round-information-reports-2025-09-10/.

[3] *Nvidia discusses Perplexity investment at $30 billion-plus valuation, The information reports*, Reuters (Aug. 23, 2026 11:18 PM), https://www.reuters.com/technology/nvidia-discusses-perplexity-investment-30-billion-plus-valuation-information-2026-08-24/.

[4] Joanne Chen, *How Perplexity.ai is Pioneering the Future of Search*, Forbes (Sept. 6, 2023 6:02 PM), https://www.forbes.com/sites/joannechen/2023/09/06/how-perplexityai-is-pioneering-the-future-of-search/.

[5] Search result for "Perplexity," Google, https://www.google.com/search?q=perplexity&rlz=1C5GCEM_enUS1226&oq=perplexity&gs_lcrp=EgZjaHJvbWUqEAgAEAAYgwEY4wIYsQMYgAQyEAgAEAAYgwEY4wIYsQMYgAQyEwgBEC4YgwEYxwEYsQMY0QMYgAQyDQgCEAAYgwEYsQMYgAQyCggDEAAYsQMYgAQyCggEEAAYsQMYgAQyBwgFEAAYgAQyCggGEAAYsQMYgAQyBggHEAUYQKgCALACAA&sourceid=chrome&source=chrome.ob&ie=UTF-8&sei=WIaYaomAE7zUp84PjZWAwAU (on file with Susman Godfrey) (last visited Sept. 9, 2026).

[6] *Where curiosity meets capability*, Perplexity, https://www.perplexity.ai/hub/pricing (last visited Sept. 9, 2026).

internet but can also act as a "personal assistant" by drafting emails, creating study plans, and shopping for the user.[7] In November 2025, Perplexity separately launched the Comet Assistant, which it markets as "agentic AI that works exclusively for you" to "get more done: planning trips, researching purchases, managing job searches, eliminating to-do lists and the online chores that span endless tabs."[8]

29. Upon information and belief, [redacted]

[7] *The Browser that Works for You*, Perplexity, https://www.perplexity.ai/comet (last visited Sept. 9, 2026).

[8] *The New Comet Assistant*, Perplexity (Nov. 6, 2025), https://www.perplexity.ai/hub/blog/the-new-comet-assistant.

[9] [redacted]

[10] [redacted]

[11] *Id.*

[redacted]

31. [redacted]

32. Perplexity [redacted]

**III.** **Perplexity** [redacted]

33. [redacted]

---

[12] [redacted]

[14] *Id.*; *see also Perplexity*, SACRA, https://sacra.com/c/perplexity/ (last visited Sept. 9, 2026) (estimating that "Perplexity hit $750M in annualized revenue in August 2026, up from $232M at the end of 2025").

[15] *Id.*

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[Continued on next page]

[redacted]

**Figure 1**[16]

16 [redacted] (annotation added).

[redacted]

**Figure 2**[17]

## A. <u>DaVoice and Perplexity</u> [redacted]

36. DaVoice, as the far smaller and lesser-known party in the business relationship with Perplexity, was excited about the prospect of a long-term partnership with Perplexity. After

17 [redacted] (annotation added).

Perplexity reached out, DaVoice began devoting its time and resources to work almost exclusively with Perplexity. [redacted]

37. On August 11, 2025, the parties entered into a Micro Wake Word Model Use Restrictions Agreement ("Use Restrictions Agreement"), which specified that [redacted] A true and correct copy of the Use Restrictions Agreement is attached as Exhibit A.

38. On August 26, 2025, the parties also entered into a Mutual Confidentiality and Non-Disclosure Agreement ("MNDA"), [redacted],

[redacted] A true and correct copy of the MNDA is attached as Exhibit B.

39. [redacted]

40. With the Use Restrictions Agreement and MNDA in place, [redacted]

41. [redacted]

42. [redacted]

**B. <u>Master Subscription Agreement</u>**

43. Following the negotiations described above, the parties executed the Master Subscription Agreement ("MSA"), dated August 29, 2025. A true and correct copy of the MSA is attached as Exhibit C.

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

47. The terms and conditions of the MSA as referenced in the license grant include at least four provisions relevant to this case, including provisions to protect DaVoice from the type of harm for which it seeks relief in this action.

48. First, Section 2.4 [redacted]

49. Second, Section 4.2 [redacted]

---

[18] The MSA defines [redacted] Ex. C at Sec. 1.5.

[19] The MSA defines [redacted] Ex. C at Sec. 1.4.

[20] The MSA defines [redacted] Ex. C at Sec. 1.10.

[21] The MSA defines [redacted] Ex. C at Sec. 4.1.

50. Third, Section 4.4, titled [redacted]

51. Fourth, Section 5.1 provides that [redacted]

52. Two other provisions are noteworthy. The first is [redacted] *Id.*

53. The second is the [redacted] Ex. C at Sec. 6.2 (capitalization removed).

**C. <u>The Parties' Continued Relationship</u>**

54. Even before the MSA was fully executed, Perplexity appealed to [redacted]:

[redacted]

**Figure 3**

55. [redacted]

56. [redacted]

[redacted] [redacted]

[redacted]

59. Motivated to continue its partnership with Perplexity, DaVoice did so—but only after obtaining Perplexity's written agreement to further confidentiality and non-use terms on top of the already executed contracts described above.

60. Specifically, on September 6, 2025, [redacted], Mr. Fryman of DaVoice sent [redacted] of Perplexity the following email:

[redacted]

> [redacted]

[redacted]

62. Only after this written confirmation did DaVoice share the proprietary training data.[23]

63. In addition to the level of disclosure expected and extracted under the guise of a long-term partnership, [redacted]

[redacted]

---

[22] All emphasis in original.

[23] Similarly, on November 4, 2025, Mr. Fryman reinforced the confidentiality of and use restrictions around DaVoice's proprietary source code on a call with [redacted] before sharing certain code with him. Mr. Fryman memorialized the discussion in an email: "[redacted]"

[redacted]

65. Upon information and belief, [redacted]

67. For its part, [redacted].[25]

68. [redacted]

[24] *See supra* at nn.16 & 17 and accompanying Figures 1 and 2.
[25] [redacted]
[27] *Id.*
[28] *Id.*

69. For Perplexity, offering a [redacted].

## IV. Perplexity Secretly Uses DaVoice's Proprietary Technology [redacted]

70. [redacted]. Perplexity was in a jam, and it once again needed a solution—and fast. By Perplexity's own telling, [redacted]

[redacted]

72. On March 18, 2026, Mr. Fryman of DaVoice emailed [redacted]

[29] [redacted]

[redacted]

**Figure 4**

[redacted]

74. Instead, DaVoice discovered that Perplexity had built a new wake-word system [redacted]

75. Stunned, DaVoice reached back out to Perplexity for an explanation. When confronted about Perplexity's unilateral action, [redacted]

**V. <u>DaVoice Confirms Perplexity's Willful Misappropriation</u>**

76. Perplexity's statement defies logic. [redacted]

77. The inherent implausibility of Perplexity's story is further bolstered by [redacted] After

Perplexity's statement, DaVoice accessed [redacted].

78. [redacted].

79. Sure enough, even a cursory comparison [redacted] disproved Perplexity's story. For one, [redacted].

80. As another example, the architecture of DaVoice's wake-word model [redacted].

81. Upon information and belief, [redacted]—which contains and was built with DaVoice's proprietary source code, inference logic, network architecture, training approaches, training data, and know-how—and modified it around the margins to accommodate [redacted].

82. Indeed, when confronted about the implausibility of [redacted].

83. On March 19-20, 2026, Mr. Fryman and [redacted] exchanged WhatsApp messages in which Mr. Fryman wrote, in relevant part:

[redacted].

[redacted]

[redacted]

[redacted]

[redacted].

84. [redacted] responded:

[redacted]

[redacted]

85. This response is telling in at least two ways. First, [redacted] Second, [redacted].

86. Mr. Fryman also contacted [redacted] after he discovered Perplexity's misappropriation of DaVoice's proprietary technology. [redacted]

[redacted]

88. Upon information and belief, Perplexity continues to rely on the misappropriated DaVoice technology to power [redacted]. As a result of Perplexity's willful and malicious misappropriation of DaVoice's proprietary and trade-secret technology, Perplexity has been able to [redacted]

89. There is nothing stopping Perplexity's brazen misappropriation of DaVoice's proprietary technology from being used for [redacted].[30] Indeed, the technology that Perplexity extracted from DaVoice, under the guise of a long-term business partnership, can be misappropriated and deployed

[30] During the parties' months of collaboration, Perplexity [redacted] *See also supra* at n.9.

by Perplexity for any future project that requires a wake word. Without the Court's intervention, DaVoice will continue to be damaged.

**COUNT I**

**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C. § 1836**

90. DaVoice incorporates by reference and realleges the preceding allegations as though fully set forth herein.

91. DaVoice owns trade secrets consisting of its confidential and proprietary technology and know-how relating to wake-word solutions. DaVoice, through years of investment and development work, developed the trade secrets, as described in the preceding paragraphs. Those trade secrets consist of the technology and know-how undergirding [redacted], including DaVoice's custom model architectures and the inference code and logic undergirding wake-word systems; approaches and datasets for model training (including data that accounts for the optimal combination of accents, intonations, pauses, and speeds to expose the model to a variety of speech patterns, as well as a curated list of background noise samples against which the wake word may be spoken), emulated streaming implementations, and other proprietary know-how related to wake word detection and verification technology.

92. DaVoice protected the trade secrets through reasonable measures, including requiring execution of the August 26, 2025 MNDA (Exhibit B) and August 29, 2025 MSA (Exhibit C) before sharing proprietary information; negotiating and obtaining specific confidentiality, non-use, and non-disclosure provisions in the MNDA and MSA; imposing supplemental written restrictions on the use and disclosure of training data and inference code; and initially sharing binaries only under time-limited license-key mechanisms, as described in the preceding paragraphs.

93. The trade secrets derived economic value from not being known or readily ascertainable, and they relate to products or services used in, or intended for use in, interstate commerce, including, for example, the [redacted]

94. Perplexity used DaVoice's trade secrets by incorporating [redacted] without consent and with knowledge that the trade secrets were acquired under circumstances imposing a duty to limit use. As evinced from the MNDA, MSA, supplemental emails, license-key mechanism for the binary libraries, and other course of dealing, Perplexity knew that the information it received was secret and proprietary and that it was illegal to use the technology it received from DaVoice to [redacted].

95. Perplexity used the false and misleading promise of a potentially long-term and lucrative business partnership to lure DaVoice into executing the MNDA and MSA (the contracts subject to which DaVoice disclosed its trade secrets to Perplexity). It then breached those contracts by, among other things, using the technical expertise and know-how that DaVoice provided to Perplexity to [redacted].

96. Perplexity's misappropriation was willful and malicious, which entitles DaVoice to exemplary damages of up to two times the amount of actual damages pursuant to 18 U.S.C. § 1836(b)(3)(C), as well as reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D). Perplexity knew of DaVoice's trade secret rights, knew of its contractual obligations to protect DaVoice's confidential information, and yet deliberately used DaVoice's proprietary technology to [redacted].

97. As a direct result of Perplexity's misappropriation, DaVoice has suffered and continues to suffer damages, including lost profits—[redacted] from other deals in which Perplexity may use DaVoice's wake-word technology without consent, and from DaVoice's other lost business opportunities in the months that it devoted itself almost exclusively to the Perplexity project. DaVoice has suffered and continues to suffer damages from Perplexity's prohibited disclosure of DaVoice's proprietary information [redacted].

98. In addition, as a direct result of Perplexity's misappropriation, Perplexity profited from and was unjustly enriched by using DaVoice's technology [redacted]

[redacted]. Perplexity also avoided years of development costs by leveraging DaVoice's technology.

**COUNT II**

**Misappropriation of Trade Secrets Under the California Uniform Trade Secrets Act, California Civil Code § 3426**

99. DaVoice incorporates by reference and realleges the preceding allegations as though fully set forth herein.

100. DaVoice owns trade secrets within the meaning of Cal. Civ. Code § 3426.1(d). Those trade secrets are the same as described in Count One. The trade secrets derived economic value from not being known or readily ascertainable.

101. DaVoice protected the trade secrets through reasonable measures, including requiring execution of the August 26, 2025 MNDA (Exhibit B) and August 29, 2025 MSA (Exhibit C) before sharing proprietary information; negotiating and obtaining specific confidentiality, non-use, and non-disclosure provisions in the MNDA and MSA; imposing supplemental written restrictions on the use of training data and inference code; and initially sharing binaries only under time-limited license-key mechanisms, as described in the preceding paragraphs.

102. Perplexity used DaVoice's trade secrets by incorporating [redacted] without consent and with knowledge that the trade secrets were acquired under circumstances imposing a duty to limit use. As evinced from the MNDA, MSA, supplemental emails, license-key mechanism for binaries, and other course of dealing, Perplexity knew the information it received was secret and proprietary, and that it was illegal to use the technology it received from DaVoice to [redacted].

103. Perplexity used the false and misleading promise of a potentially long-term and lucrative business partnership to lure DaVoice into executing the MNDA and MSA (the contracts subject to which DaVoice disclosed its trade secrets to Perplexity). It then breached those contracts by, among other things, using the technical expertise and know-how that DaVoice provided to Perplexity to accelerate Perplexity's development of its own wake-word implementation.

104. Perplexity's misappropriation was willful and malicious, which entitles DaVoice to exemplary damages pursuant to California Civil Code § 3426.3, as well as attorneys' fees and costs pursuant to California Civil Code § 3426.4. Perplexity knew of DaVoice's trade secret rights, knew of its contractual obligations to protect DaVoice's confidential information, and yet deliberately used DaVoice's proprietary technology to [redacted].

105. As a direct result of Perplexity's misappropriation, DaVoice has suffered and continues to suffer damages, including lost profits—[redacted], from other deals in which Perplexity may use DaVoice's wake-word technology without consent, and from DaVoice's other lost business opportunities in the months that it devoted itself almost exclusively to the Perplexity project. DaVoice has suffered and continues to suffer damages from Perplexity's prohibited disclosure of DaVoice's proprietary information [redacted].

106. In addition, as a direct result of Perplexity's misappropriation, Perplexity profited from and was unjustly enriched by using DaVoice's technology [redacted]. Perplexity also avoided years of development costs by leveraging DaVoice's technology.

**<u>COUNT III</u>**

**Breach of Contract (Master Subscription Agreement)**

107. DaVoice incorporates by reference and realleges the preceding allegations as though fully set forth herein.

108. The Master Subscription Agreement ("MSA") (Exhibit C), dated August 29, 2025, is a valid and enforceable contract between DaVoice and Perplexity.

109. DaVoice has performed its obligations under the MSA.

110. Perplexity has breached the MSA in multiple material respects, including [redacted]

[redacted]

111. As a direct and proximate result of Perplexity's breaches, DaVoice has suffered and continues to suffer damages, including lost profits, lost licensing revenue, lost commercial opportunities, and diminished value of its trade secrets.

**<u>COUNT IV</u>**

**Breach of Implied Covenant of Good Faith and Fair Dealing**

112. DaVoice incorporates by reference and realleges the preceding allegations as though fully set forth herein.

113. The MSA is a valid and enforceable contract between DaVoice and Perplexity.

114. In the alternative to Count Three, there is an implied covenant of good faith and fair dealing in the MSA such that no party may act to deprive the other of the benefits and bargains of the Agreement. Perplexity, which was a party to the Agreement, was bound to perform its obligations in good faith and not take any actions that might deprive DaVoice of the benefit of its bargain under the contract.

115. Perplexity was obligated to exercise any discretion under the MSA in good faith.

116. Perplexity breached the implied covenant by willfully and maliciously (1) using without consent DaVoice's Confidential Information to [redacted]; (2) reverse engineering and decompiling DaVoice's technology to replicate [redacted]; and (3) treating DaVoice's proprietary software, technology, and data as Perplexity's own.

117. Perplexity's actions were meant to interfere with DaVoice's rights to receive the benefits of the MSA. The breaches deprived DaVoice of value under the MSA. Perplexity acted in bad faith to thwart the purposes of the MSA.

118. DaVoice was damaged by Perplexity's breach.

**COUNT V**

**Fraudulent Inducement**

119. DaVoice incorporates by reference and realleges the preceding allegations as though fully set forth herein.

120. Perplexity repeatedly falsely represented to DaVoice that it would pursue a long-term business partnership with DaVoice for development of wake-word solutions.

121. Perplexity knew that its statements were false at the time they were made.

122. Perplexity made its false representations to DaVoice in order to induce DaVoice to [redacted] (2) share with Perplexity its proprietary inference code and logic, training approaches and datasets, data for model training, streaming implementations, and specialized know-how that it has never previously shared with a third party, and (3) remove the license-key mechanism under which it consistently shares deliverables with any client.

123. DaVoice justifiably relied on Perplexity's misrepresentations of a long-term business partnership given the parties' history of near-daily collaboration and the inclusion of the Extension Term provision in the MSA.

124. DaVoice has suffered damages as a consequence of its reliance on Perplexity's misrepresentations by accepting a lower contractual price than it would have otherwise been willing to accept, by disclosing its proprietary technology and know-how to Perplexity, and by doing so as to the binaries without a license-key mechanism that it otherwise would have to ensure that any disclosure expired after some predetermined time period.

**COUNT VI**

**Violation of California Unfair Competition Law,**

**California Business and Professions Code § 17200 et seq.**

125. DaVoice incorporates by reference and realleges the preceding allegations as though fully set forth herein.

126. Section 17200 of the California Business and Professions Code prohibits any unlawful, unfair, or fraudulent business act or practice.

127. Perplexity has engaged in unlawful business acts and practices by misappropriating DaVoice's trade secrets in violation of the California Uniform Trade Secrets Act and the Defend Trade Secrets Act; by breaching its contractual obligations; and by fraudulently inducing DaVoice to disclose its proprietary technology that it otherwise would not have but for Perplexity's misrepresentations. As alleged herein, Perplexity abused its bargaining power by dangling the prospect of a long-term business partnership to extract DaVoice's valuable proprietary technology, using that technology to [redacted] without authorization or compensation, and cutting DaVoice out of a [redacted].

128. As a direct and proximate result of Perplexity's unlawful business acts and practices, DaVoice has suffered and continues to suffer injury in fact and has lost money or property. DaVoice is entitled to restitution and injunctive relief pursuant to Section 17203 of the California Business and Professions Code.

**<u>COUNT VII</u>**

**Unjust Enrichment**

129. DaVoice incorporates by reference and realleges the preceding allegations as though fully set forth herein.

130. In the alternative to Counts Three and Four, and to the extent any agreement between the parties does not govern the conduct at issue, DaVoice asserts a claim for unjust enrichment.

131. DaVoice conferred a substantial benefit upon Perplexity by disclosing its proprietary wake-word technology, specialized expertise, and know-how over months of intensive collaboration. DaVoice's technology enabled Perplexity to [redacted].

132. Perplexity was further unjustly enriched at DaVoice's expense by avoiding the years and development costs of creating a wake-word implementation of DaVoice's caliber from scratch; using DaVoice's proprietary technology to [redacted] without

paying appropriate licensing fees; and continuing to benefit from its wrongdoing without authorization from or compensation to DaVoice.

133. Perplexity is liable under common law principles of unjust enrichment for its use of DaVoice's trade secrets to develop and implement its wake word [redacted].

134. Given these circumstances, equity and good conscience require restitution to DaVoice. Perplexity should be ordered to pay DaVoice a fair price for using DaVoice's trade secrets to [redacted]. Alternatively, Perplexity should be ordered to disgorge to DaVoice the profits that Perplexity earned from its misconduct.

135. Perplexity's conduct has injured DaVoice, and DaVoice is entitled to restitution and/or disgorgement of profits and other remedies provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, DaVoice respectfully demands judgment against Perplexity as follows:

a. Declaring that Perplexity has misappropriated trade secrets under both the DTSA, 18 U.S.C. § 1836, and the CUTSA, Cal. Civ. Code § 3426;

b. Declaring that Perplexity has breached the Master Subscription Agreement;

c. Awarding DaVoice lost profits and/or reasonable royalty damages in an amount no less than a reasonable royalty for Perplexity's misappropriation of the trade secrets, together with pre-judgment and post-judgment interest and costs as permitted under 35 U.S.C. § 284;

d. Awarding DaVoice exemplary damages for willful and malicious misappropriation of trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(C) and Cal. Civ. Code § 3426.3;

e. Awarding DaVoice with unjust enrichment obtained by Perplexity as a result of its unlawful misappropriation and use of DaVoice's proprietary technology;

f. Permanently enjoining Perplexity from engaging in the unlawful conduct alleged herein;

g. Awarding DaVoice costs, expenses, and attorneys' fees as permitted by law;

h. Awarding DaVoice pre-judgment and post-judgment interest at the maximum rate permitted by law; and

i. Awarding DaVoice such other or further relief as the Court may deem just.

**DEMAND FOR TRIAL**

DaVoice demands a trial by jury on all issues so triable.

Dated: September 24, 2026

**SUSMAN GODFREY L.L.P.**

By: /s/ Davida Brook

Davida Brook (CA Bar No. 275370)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
dbrook@susmangodfrey.com
T: (310) 789-3100
F: (310) 789-3150

Ian B. Crosby (*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
T: (206) 516-3880
F: (206) 516-3883
icrosby@susmangodfrey.com

Y. Gloria Park (*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P
One Manhattan West, 50th Floor
New York, NY 10001
gpark@susmangodfrey.com
T: (212) 336-8330
F: (212) 336-8340

Richard “Chipper” Adams
(*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
cadams@susmangodfrey.com
T: (713) 651-9366
F: (713) 654-6666

*Attorneys for Plaintiff SyteMLLabs (d/b/a DaVoice)*